UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

DENISE J. SHIREMAN,

     Plaintiff,

v.                                        Case No. 3:15cv99-CJK

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

     Defendant.

_____/

## MEMORANDUM ORDER

This case is now before the court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final determination of the Commissioner of Social Security ("Commissioner") denying Denise J. Shireman's applications for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"), 42 U.S.C. §§ 401-34, and Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-83.  Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have consented to Magistrate Judge jurisdiction for all proceedings in this case, including entry of final judgment.  Upon review of the record before the court, I conclude the Administrative Law Judge ("ALJ") erred by failing to explain why he rejected Dr. Harper's finding that Ms. Shireman has moderate difficulties in responding appropriately to usual work situations and why

he did not include that finding when formulating the important residual functional capacity.  The decision of the Commissioner, therefore, will be remanded to the ALJ for additional proceedings consistent with this order.

## ISSUES ON REVIEW

Ms. Shireman, who will be referred to as claimant, plaintiff, or by name, raises two issues.  She claims: (1) the Commissioner erred in finding her capable of work at the medium level of physical exertion; and (2) the Commissioner erred in omitting from the mental residual functional capacity assessment her impairment to respond appropriately to usual work situations.  (Doc. 16).

## PROCEDURAL HISTORY

On February 18, 2009, Ms. Shireman filed applications for DIB and SSI, alleging disability beginning December 1, 2007.  T. 97.[1]  The Commissioner denied the applications on August 24, 2009.  T. 97.  Thereafter, claimant requested a hearing; she appeared before Administrative Law Judge Renee Blackmon Hagler for the hearing on February 9, 2011.  T. 97.  On April 5, 2011, Judge Hagler found claimant was not disabled under the Act.[2]  T. 94-111.  The Appeals Council denied

---

[1] The administrative record, as filed by the Commissioner, consists of ten volumes (docs. 14-2 through 14-11), and has 737 consecutively numbered pages.  References to the record will be by "T.," for transcript, followed by the page number.

[2] Judge Hagler found plaintiff had the residual functional capacity to "perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) except she would require a work environment free of pulmonary irritants and extremes in temperature changes.  She would be able to lift twenty pounds occasionally and ten pounds frequently.  She could sit for eight hours out of eight and stand/walk for six hours out of eight.  She could perform simple, routine, repetitive tasks to

claimant's request for further review on July 16, 2012, and, as a result, Judge Hagler's decision became the final determination of the Commissioner.  T. 117-20. Plaintiff did not seek further review of Judge Hagler's decision denying the initial applications for DIB and SSI.

On April 25, 2011, Ms. Shireman again filed applications for DIB and SSI, alleging disability commencing December 31, 2009.  T. 403, 405.  The Commissioner denied the applications initially, T. 124, 137, and on reconsideration. T. 150, 165.  Claimant appeared before Administrative Law Judge David Murchison (hereinafter "ALJ") for a hearing on January 3, 2013.  T. 67.  The ALJ conducted a supplemental hearing on May 9, 2013.  T. 55.  After the two hearings, the ALJ issued a decision on June 19, 2013, denying the applications for DIB and SSI.  T. 182-205. Plaintiff requested review of the ALJ's June 2013 decision, T. 353, 355; the Appeals Council remanded the case to the ALJ for further consideration on April 2, 2014.  T. 211-214.  The ALJ held a post-remand hearing on September 11, 2014.  T. 44. Following the hearing, the ALJ issued a decision on September 24, 2014, denying plaintiff's claims.  T. 14-37.  The Appeals Council denied claimant's request for further review and, as a result, the ALJ's September 2014 decision became the final

---

accommodate concentration deficits resulting from both mental and physical impairments."  T. 103.

determination of the Commissioner.  T. 1-3.  The determination of the Commissioner is now before the court for review.

## FINDINGS OF THE ALJ

In his written decision, the ALJ made a number of findings relative to the issues raised in this appeal:

• Claimant meets the insured status requirements of the Social Security Act through December 31, 2014.  T. 20.

• Claimant has not engaged in substantial gainful activity since April 6, 2011, the day after the date of the prior unfavorable Administrative Law Judge decision.  T. 20.

• Claimant has the following severe impairments: depressive disorder, anxiety disorder, asthma, sleep apnea, mild sinus disease, dysthymic disorder, and unspecified personality disorder.  T. 20.

• Claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  T. 21.

• Claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c) and 416.967(c).  Claimant could complete medium exertional work with only occasional exposure to pulmonary irritants such as excessive dust, fumes, and gases.  No temperature extremes with only occasional

exposure to humidity greater than seventy percent.  Claimant is able to understand, remember, and carry out short and simple instructions with occasional interaction with the general public, co-workers, and supervisors.  Claimant is limited to work that has only occasional changes in the work setting.  T. 23-24.

- • Claimant is unable to perform any past relevant work.  T. 35.

- • Considering claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that claimant can perform.  T. 36.

- • Claimant has not been under a disability, as defined in the Social Security Act, from April 6, 2011, through September 24, 2014.  T. 37.

## STANDARD OF REVIEW

A federal court reviews a Social Security disability case to determine whether the Commissioner's decision is supported by substantial evidence and whether the ALJ applied the correct legal standards.  *See Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied.").  Substantial evidence is "'such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197

(1938)).  "Substantial evidence is something 'more than a mere scintilla, but less than a preponderance.'"  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (*quoting Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987)).  Even if the evidence preponderates against the Commissioner's decision, the decision must be affirmed if supported by substantial evidence.  *See Sewell v. Bowen*, 792 F.2d 1065, 1067 (11th Cir. 1986).

When reviewing a Social Security disability case, the court "'may not decide the facts anew, re-weigh the evidence, or substitute [its] judgment for that of the [Commissioner] . . . .'"  *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (*quoting Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see also Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818 (11th Cir. 2015) (*citing Black Diamond Coal Min. Co. v. Dir., OWCP*, 95 F.3d 1079, 1082 (11th Cir. 1996)) ("In determining whether substantial evidence supports a decision, we give great deference to the ALJ's factfindings.").  A reviewing court also may not look "only to those parts of the record which support the ALJ[,]" but instead "must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ."  *See Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983).  Review is deferential to a point, but the reviewing court conducts what has been referred to as "an independent review of the record."  *See Flynn v. Heckler*, 768 F.2d. 1273 (11th Cir. 1985); *see also Getty ex rel. Shea v. Astrue*, No. 2:10-cv-

725-FtM-29SPC, 2011 WL 4836220 (M.D. Fla. Oct. 12, 2011); *Salisbury v. Astrue*, No. 8:09-cv-2334-T-17TGW, 2011 WL 861785 (M.D. Fla. Feb. 28, 2011).[3]

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff not only is unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  *Id.* § 423(d)(2)(A).  Pursuant to 20 C.F.R. §§ 404.1520(a)-(g) and 416.920(a)-(g), the Commissioner analyzes a disability claim in five steps:

1.    If the claimant is performing substantial gainful activity, she is not disabled.

2.    If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

---

[3] The Eleventh Circuit not only speaks of an independent review of the administrative record, but it also reminds us that it conducts a *de novo* review of the district court's decision on whether substantial evidence supports the ALJ's decision.  *See Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1260 (11th Cir. 2007); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).

3.     If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4.     If the claimant's impairments do not prevent her from doing past relevant work, she is not disabled.[4]

5.     Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates the claimant's residual functional capacity and vocational factors, she is not disabled.

## FACT BACKGROUND AND MEDICAL HISTORY[5]

At multiple hearings before the ALJ, Ms. Shireman offered testimony as to her health conditions and daily activities.  On the date of the last hearing, September 11, 2014, she was 57 years old.  T. 48.  She is 5'9'' tall and weighs around 160 pounds.  T. 74.  She earned a four-year degree from Memphis State University and

---

[4] Claimant bears the burden of establishing a severe impairment that keeps her from performing her past work.  *See* 20 C.F.R. § 416.912; *Chester v. Bowen*, 792 F. 2d 129, 131 (11th Cir. 1986).

[5] The recitation of medical and historical facts of this case, as set out below, is based on the court's independent review of the record.  The facts below, where not derived from the medical records, are based largely on plaintiff's testimony in that regard.  Although intended to be thorough and to provide an overview of the claimant's medical history, the synopsis of medical evidence will be supplemented as necessary in the Analysis section.

worked as a social worker until 2009.  T. 70, 72.  Anxiety attacks caused her to stop working.  T. 59.  She also has "horrible asthma," sleep apnea, and sinusitis; a doctor has recommended surgery to remove polyps from her nose but she cannot afford it. T. 74-76.  She is unable to work due to gastroenteritis, breathing difficulties, and "severe depression and anxiety."  T. 71, 76.  About eight or nine years ago she began taking medication for depression.  T. 75.  Over the last five to six years she has become more depressed and isolated.  T. 71.  She is unable to sleep at night and has trouble concentrating.  T. 75.  During the day, she feels very lethargic; she stays in bed most of the time and has difficulty getting up to take a shower or wash her hair. T. 75-78.  She watches 14 to 16 hours of television a day and feels anxious around other people.  T. 61, 78.  For the last year and a half, she has received medication and therapy from a mental health facility but has not noticed significant improvement.  T. 71-72.  Although she can drive a car "from time-to-time," she does not drive long distances due to anxiety attacks.  T. 73, 75.  She previously took Lexapro but, after experiencing side effects, switched to Zoloft.  T. 74.

Medical records also appear in the evidence before the Commissioner.  Peter T. Oas, Ph.D., performed a consultative psychological evaluation of Ms. Shireman on May 26, 2011.  T. 597-600.  Claimant reported suffering from colitis, anxiety, asthma, acid reflux, sleep apnea, and depression.  T. 597.  Her medications included Zoloft, Xanax, Nexium, Singulair, and Advair.  T. 597-598.  Upon completion of the

evaluation, Dr. Oas assessed "dysthymic disorder" and mild "generalized anxiety disorder." T. 599. The doctor noted: "She states her physical problems are primarily disabling and she has been able to work over the years with the same level of depression and anxiety." T. 599.

Claimant sought treatment for depression and anxiety at Bridgeway Center. On July 29, 2011, claimant reported feeling "depressed every day" and "tired all the time due to lack of sleep." T. 612. She indicated she was "having a hard time getting motivated" and "having trouble concentrating and being unable to focus." T. 612. Although she denied ever trying to commit suicide, she had "seriously" thought about it. T. 612. During weekly panic attacks, she experienced trouble breathing. T. 612. Claimant also expressed concern "about having a panic attack while driving." T. 612. Staff diagnosed "depressive disorder NOS" and "anxiety disorder NOS" and recommended six months of individual therapy "to work on her depression and anxiety." T. 613.

On August 5, 2011, David Guttman, M.D., reviewed Ms. Shireman's medical records and concluded she had the residual functional capacity ("RFC") to: occasionally lift and/or carry 20 pounds; frequently lift and/or carry 10 pounds; stand and/or walk for about 6 hours in an 8-hour workday; and sit for about 6 hours in an 8-hour workday. T. 159. Dr. Guttman, also determined claimant should avoid concentrated exposure to "fumes, odors, dusts, gases, poor ventilation, etc." T. 160.

The doctor based these findings in part on the results of June 7, 2011 pulmonary function tests.  T. 159.

On August 28, 2012, Mary Lanette Rees, M.D., reviewed Ms. Shireman's medical record.  T. 619.  Dr. Rees noted plaintiff's history of chronic diarrhea, GERD, and asthma, as well as Judge Hagler's determination that plaintiff was limited to light work.  T. 619.  Dr. Rees agreed with Dr. Guttman's August 5, 2011 RFC assessment, which found claimant was limited to light work and a work environment free of pulmonary irritants.  T. 619.

Bridgeway Center's Nataliya Reno, ARNP, and James L. Igleburger, M.D., completed a Residual Functional Capacity Questionnaire on November 27, 2012.  T. 671-72.  The form indicated plaintiff had: (1) moderate restriction of activities of daily living; (2) moderate degree of difficulty in maintaining social functioning; (3) marked deficiencies of concentration, persistence, or pace resulting in failure to complete tasks in a timely manner; (4) moderate limitations in her ability to understand, carry out, and remember instructions in a work setting; (5) moderate to marked limitations in her ability to respond appropriately to supervision and co-workers in a work-setting; (6) moderate limitations in her ability to perform simple tasks in a work setting; and (7) moderate to marked limitations in her ability to

perform repetitive tasks in a work setting.[6]  T. 671.  The form reported diagnoses of "depressive disorder NOS" and "anxiety disorder NOS."   T. 672.   Claimant's prognosis was deemed "poor."  T. 672.

Nurse Reno and Dr. Igleburger also completed a Medical Source Statement of Ability to Do Work-Related Activities (Mental). T. 668-70.[7]  The form suggested plaintiff had marked restrictions in her ability to understand and remember simple instructions; carry out simple instructions; understand and remember complex instructions; carry out complex instructions; make judgments on complex work-related decisions; and interact appropriately with supervisors and co-workers.  T. 668-69.  The form also indicated plaintiff had moderate to marked restriction in her ability to respond appropriately to usual work situations and to changes in a routine work setting and moderate restriction in her ability to make judgments on simple work-related decisions and ability to interact appropriately with the public.  T. 668-69.

Charles Johnson, M.D., performed a consultative physical examination of Ms. Shireman on February 16, 2013.  T. 674-86.  Claimant reported suffering from colitis, GERD, diarrhea, sleep apnea, asthma, sinusitis, depression, and anxiety.  T.

---

[6] The Questionnaire defined "moderate" as "an impairment which affects but does not preclude ability to function and "marked" as "an impairment which seriously affects ability to function." T. 672.
[7] The Medical Source Statement defined "moderate" as "more than a slight limitation . . . but the individual is still able to function satisfactorily" and "marked" as a "serious limitation" with "substantial loss in the ability to effectively function."  T. 668.

674-675, 678.   Dr. Johnson noted claimant "was able to walk heel-to-toe with moderate difficulty" and was "dyspneic on minimal exertion." T. 677.   The physical examination revealed "passive range of motion in the shoulders [was] limited to 100 degrees of abduction bilaterally." T. 678.   A normal range of motion extends to 150 degrees.   T. 680.   Based on his review of the record and examination, Dr. Johnson concluded plaintiff could: never lift and/or carry 51 to 100 pounds; occasionally (up to one-third of the day) lift and/or carry 11 to 50 pounds; and frequently (one-third to two-thirds of the day) lift and/or carry up to 10 pounds.   T. 679, 681.   Dr. Johnson also concluded plaintiff would only be able "to reach overhead with either hand occasionally" and reach in all other directions only frequently.   T. 679, 683.   In Dr. Johnson's opinion, claimant's ability to handle, finger, feel, push, and pull were also limited to a frequent basis.   T. 683.

Julie Harper, Psy.D., performed a consultative mental evaluation of Ms. Shireman on February 20, 2013.   T. 691-94.   Dr. Harper diagnosed "panic disorder without agoraphobia" and "dysthymic disorder."   T. 694.   The doctor's clinical summary indicated:

> Ms. Shireman is a woman who has a tendency to be preoccupied by her own anxious thoughts and bodily sensations.   While you are speaking to this claimant, she is focused internally, thus, her anxiety distracts her and she missed some basic directions during the [mental status examination] because of her internal preoccupation.   It is possible to view Ms. Shireman's over-reaction to internal sensations because she becomes short of breath and shows a frightened expression.

T. 694.

Claimant returned to the Bridgeway Center on December 13, 2013.  T. 704-05.  Notes from the visit indicate she was admitted to Fort Walton Beach Medical Center from November 18 to November 26 following a suicide attempt; after spending 24 hours in the emergency room, she was transferred to the psychiatric unit of the medical center.  T. 704.  Plaintiff reported to Bridgeway staff that she felt the Zoloft prescription was not working.  T. 704.  Staff discontinued Zoloft and started her on Effexor.  T. 705.

On May 10, 2014, Jun Yoo, D.O., performed a consultative physical examination of Ms. Shireman.  T. 717-26.  At the time, plaintiff was 5'9" tall and weighed 175 pounds.  T. 718.  After the examination, Dr. Yoo determined claimant could continuously lift and/or carry up to 20 pounds and frequently lift and/or carry up to 100 pounds.  T. 720.  Dr. Yoo found no limitations in claimant's ability to use her hands or feet and believed she could sit, stand, or walk for 8 hours in an 8-hour work day. T. 721-23.  Dr. Yoo concluded plaintiff should be limited to only frequent use of a motor vehicle and occasional exposure to humidity, wetness, extreme cold, extreme heat, dust, odors, fumes, and other pulmonary irritants.  T. 724.  The doctor noted that "no medical or clinical evidence" supported any limitation in activity.  T. 719.

On May 20, 2014, Dr. Harper performed a second consultative psychological evaluation.  T. 728-32.  Ms. Shireman reported "her depression became quite severe after" the February 20, 2013 evaluation with Dr. Harper and indicated she had been hospitalized following a suicide attempt in November 2013.  T. 729.  Dr. Harper diagnosed "dysthymic disorder"; "major depressive disorder, single episode, moderate"; unspecified personality disorder with borderline features"; and "generalized anxiety disorder."  T. 731.

As part of the evaluation, Dr. Harper completed a Medical Source Statement of Ability to do Work-Related Activities (Mental).  T. 733-35.  Dr. Harper concluded Ms. Shireman had mild restriction in her ability to understand, remember, and carry out complex instructions.  T. 733.  Dr. Harper supported her conclusions by noting: "Low average memory responses on the [mental status examination].  The claimant attempted to malinger severe memory impairment at first but changed her level of cooperation and provided valid responses for the remainder of the appointment."  T. 733.  The form also indicated plaintiff had moderate restrictions in her ability to interact appropriately with the public, supervisors, and co-workers, and moderate restriction in her ability to respond appropriately to usual work situations and to changes in a routine work setting.  T. 734.  Dr. Harper noted "claimant is very agitated, blaming, and confrontational today.  Personality disturbance may affect work relationships."  T. 734.

## ANALYSIS

### Physical Residual Functional Capacity

Ms. Shireman asserts the Commissioner erred in finding she is capable of performing work at the medium level of physical exertion.  Medium work "involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."   20 C.F.R. §§ 404.1567(c), 416.967(c).   Plaintiff contends she is limited to light work—which "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."[8] (Doc. 16, p. 12-20); 20 C.F.R. §§ 404.1567(b), 416.967(b).  Ms. Shireman claims substantial evidence does not support the ALJ's determination that she could perform medium work with no limitation in the use of her arms because the determination is inconsistent with Judge Hagler's April 5, 2011 RFC assessment, the ALJ's June 19, 2013 RFC assessment, and Dr. Johnson's opinion.  (Doc. 16, p. 19-20).

Judge Hagler's April 5, 2011 decision found claimant was "limited to a reduced range of work at the light level of physical exertion, with limitations on exposure to pulmonary irritants and extremes in temperature changes."  (Doc. 16, p. 14); T. 103.  Judge Hagler concluded Ms. Shireman "would be able to lift twenty

---

[8] Based on her age, education, and work experience, if Ms. Shireman were limited to light work, Grid Rule 202.06 of the Medical-Vocational Guidelines mandates a finding of disability.  (Doc. 16, p. 13); 20 C.F.R. Part 404, Subpart P, Appendix 2, Table No. 2.

pounds occasionally and ten pounds frequently." T. 103. Although Judge Hagler's RFC assessment differs from the RFC assessment currently under review, an ALJ's RFC determination is not constrained by the findings of an ALJ related to a different time period. *See Moreno v. Astrue*, 366 F. App'x 23, 27 (11th Cir. 2010) (holding "ALJ did not err in declining to give preclusive effect to" a previous RFC assessment by a different ALJ because the subsequent "application concerned an unadjudicated time period"); *McKinzie v. Comm'r of Soc. Sec.*, 362 F. App'x 71, 73 (11th Cir. 2010) ("Because McKinzie's instant application concerned an unadjudicated time period, the ALJ did not err in declining to give preclusive effect or defer to a prior finding that McKinzie could not use her arms or hands repetitively."). As the ALJ explicitly noted in his September 24, 2014 decision:

> [T]he April 5, 2011 unfavorable Administrative Law Judge decision became the final decision of the Commissioner with respect to all issues of disability on or before April 5, 2011. . . . [A]ny discussion of evidence relating to the period . . . covered by the claimant's prior applications is for historical purposes only and is no[t] intended as a reopening or revision of the prior decision.

T. 17; *see also* T. 18 ("[T]he relevant period under consideration for purposes of the claimant's Title II and Title XVI applications filed on April 22, 2011 is April 6, 2011 through [September 24, 2014]"). Thus, the inconsistencies between the ALJ's RFC determination and Judge Hagler's earlier RFC determination do not require reversal.

Plaintiff also claims the ALJ's "September 24, 2014 decision does not discuss the basis for the increasing the RFC capacity of Ms. Shireman" from the more

restrictive RFC found in the ALJ's June 19, 2013 decision.  (Doc. 16, p. 17).  In his

June 19, 2013 decision, the ALJ found Ms. Shireman:

> has the residual functional capacity to perform medium work . . . except
> [she] can frequently lift 10 pounds, she can occasionally reach
> overhead, she can frequently reach in all other directions, she frequently
> handle, finger, and feel, she can frequently climb, balance, stoop, kneel,
> crouch, and crawl, she can tolerate occasional exposure to dangerous
> machinery and dangerous heights, and she can tolerate no exposure to
> temperature extremes and pulmonary irritants.

T. 196.

The ALJ, however, was not bound by the June 2013 decision.  Administrative

*res judicata* did not apply to the ALJ's June 19, 2013 decision because the Appeals

Council vacated the decision and remanded the case to the ALJ.  T. 211-14; s*ee*

*Atkins v. Comm'r, Soc. Sec. Admin.*, 596 F. App'x 864, 868 (11th Cir. 2015) (holding

*res judicata* did not apply when "the ALJ's decision never became final because the

Appeals Council vacated it").  In addition, the ALJ's June 2013 decision relied

primarily on Dr. Johnson's opinions.  In the 2013 decision, the ALJ specifically

noted, "There are no treating medical source opinions regarding the nature and

severity of the claimant's diagnosed physical impairments and the record has not

contained any inconsistent or contrary opinions from treating or examining sources

in regard to the degree of physical limitations set out by Dr. Johnson and in the

claimant's residual functional capacity."  T. 198.  At the time of the September 2014

decision, however, contrary evidence did exist—Dr. Yoo's opinions.

The ALJ assigned "significant weight" to the opinions of Dr. Yoo, who performed a consultative physical examination of Ms. Shireman in May 2014.  T. 28, 717-26.  Dr. Yoo found claimant was capable of performing work at the medium level of exertion.  In contrast, the ALJ assigned only "some weight" to the opinions of Dr. Johnson, who concluded plaintiff could lift only 10 pounds frequently and had limitations in the ability to use her hands.  T. 27, 674-86.  Plaintiff contends Dr. Johnson's opinions are supported by his observation that claimant was "dyspneic on minimal exertion" and that she had a "limited passive range of motion in the bilateral shoulders."  (Doc. 16, p. 16); T. 677-78.

Essentially, Ms. Shireman argues the ALJ should have relied on the opinions of Dr. Johnson rather than Dr. Yoo.  The ALJ's reliance on the findings of one consultative examiner's findings over another, however, was not improper in this case.  The ALJ specifically noted Dr. Johnson's "assertion that the claimant would be limited in overhead reaching is inconsistent with the medical evidence of record" because she "has not complained of any neck, shoulder or arm pain" and stated "she is able to drive a car, sweep, and vacuum."  T. 27.  The ALJ also observed that the objective medical evidence was "innocuous" and did not support a more restrictive RFC.  T. 28; *see also* T. 25 ("The longitudinal medical evidence does not support the degree of impairment alleged or the presence of disabling mental or physical impairments.").  Moreover, the ALJ found claimant's allegations of disabling

limitations not fully credible.[9]  T. 34-35.  Based on the foregoing, the ALJ's decision to credit Dr. Yoo's findings over those of Dr. Johnson is supported by substantial evidence.

Ms. Shireman raises additional arguments related to the ALJ's evaluation of the opinion evidence.  First, plaintiff argues the ALJ did not: (1) state what weight was afforded to Dr. Rees' August 28, 2012 opinion; or (2) discuss why Dr. Rees' opinion limiting plaintiff to light work was rejected.  (Doc. 16, p. 15).  Federal regulations provide that every medical opinion in the record should be evaluated.  20 C.F.R. §§ 404.1527(c), 416.927(c); *Ricker v. Comm'r of Soc. Sec.*, No. 5:13cv479-Oc-18PRL, 2014 WL 6610849 at *3 (M.D. Fla. Nov. 21, 2014) ("The ALJ must state with particularity the weight given to different medical opinions, including non-examining state agency physicians, and the reasons therefor.") (*citing Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011)).  Failure to clearly express the weight given to the opinions of reviewing physicians, however, is not automatic grounds for reversal.  *See Sanchez v. Comm'r of Soc. Sec.*, 507 F. App'x 855, 856 (11th Cir. 2013) ("We have also declined to remand for express findings when doing so would be a 'wasteful corrective exercise' in light of the evidence of record and when no further findings could be made that would alter the ALJ's decision.") (*citing Ware v. Schweiker*, 651 F.2d 408, 412-13 (5th Cir. Unit A 1981));

---

[9] Ms. Shireman has not challenged the ALJ's credibility finding on appeal.

Case 3:15-cv-00099-CJK   Document 20   Filed 05/19/16   Page 21 of 29

Page 21 of 29

*Ricker*, 2014 WL 6610849 at *7-8 (finding ALJ's failure to assign weight to examining doctor's opinion to be harmless error when ALJ examined the doctor's findings and they were consistent with a treating physician's opinion that was rejected).

Here, the failure of the ALJ to discuss Dr. Rees' opinion constitutes harmless error.  Dr. Rees is a reviewing physician who did not conduct an examination of Ms. Shireman.  T. 619.  After reviewing the record, Dr. Rees agreed with Dr. Guttman's August 5, 2011 RFC assessment.   T. 619.   The ALJ thoroughly discussed Dr. Guttman's assessment and gave reasons—supported by substantial evidence—for assigning Dr. Guttman's conclusions "some weight."  T. 28-29 ("The undersigned finds some weight to the opinions of Dr. Guttman . . . , as he is not a treating or consultative medical source.  Moreover, this assertion that the claimant is limited to only the light exertional level is inconsistent with Dr. Yoo's opinions . . . and the total lack of debilitating objective medical findings."); *see also* 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1) ("Generally, we give more weight to the opinion of a source who has examined you than to the opinion of a source who has not examined you.").  Because the ALJ's reasons for discounting Dr. Guttman's opinion are also applicable to the opinion of Dr. Rees, the ALJ's failure to provide an independent discussion of Dr. Rees' opinion was harmless.

Ms. Shireman also claims the ALJ's "decision relies, in part, upon the fact that none of [her] physicians have stated [she] is disabled." (Doc. 16, p. 18). While discussing the opinions of Drs. Siefker, Yoo, Guttman, Oas, Hinkeldey, and Pena, the ALJ noted that the doctors failed to state claimant was disabled. T. 26, 28, 29, 32, 33, 34. Plaintiff argues that "to the extent [the ALJ's] rationale relies upon a lack or medical statements indicating Ms. Shireman is disabled, such reliance seems misplaced" because: (1) the physicians did not likely consider that Grid Rule 202.06 mandates a finding of disability if plaintiff is limited to light work; and (2) a conclusory statement by a physician that an individual is disabled is not entitled to deference because the determination of disability is reserved to the Commissioner. (Doc. 16, p. 18). Although the ALJ referenced the above doctors' failure to state claimant was disabled, he also adequately described each doctor's findings. Furthermore, plaintiff does not directly challenge the ALJ's consideration of any of the above doctors' opinions. Accordingly, plaintiff has not established the ALJ's reference to the doctors' failure to state claimant is disabled constituted reversible error.

<u>Mental Residual Functional Capacity</u>

Ms. Shireman claims "the Commissioner erred in omitting from the mental residual functional capacity assessment Ms. Shireman's impairment to respond appropriately to usual work situations." (Doc. 16, p. 20). The ALJ found claimant:

(1) "is able to understand, remember, and carry out short and simple instructions with occasional interaction with the general public, co-workers, and supervisors"; and (2) "is limited to work that has only occasional changes in the work setting."  T. 23-24.  In formulating the mental portion of the RFC, the ALJ gave significant weight to the opinion of Dr. Harper.  T. 33.  Plaintiff points out, however, the ALJ-formulated RFC makes no accommodation for "Dr. Harper's finding that Ms. Shireman has a 'moderate' impairment in responding appropriately to usual work situations[.]"  (Doc. 16, p. 22).

In response, the Commissioner argues the ALJ was not required to include a limitation concerning claimant's ability to respond appropriately to usual work situations and the ALJ "accepted Dr. Harper's conclusions as far as they were consistent with the medical evidence of record, including her mental health treatment reports from Bridgeway Center."  (Doc. 19, p. 9-10).  The Commissioner notes that "Dr. Harper indicated Plaintiff malingered during the examination" and asserts plaintiff "has not proven she has additional mental limitations that impact her RFC."  (Doc. 19, p. 10-11).

The Commissioner's characterization of the ALJ's decision is problematic.  The ALJ assigned "significant weight to the opinions of Dr. Harper" and found Dr. Harper's opinions "are consistent with the medical evidence of record including [Dr.

Hinkeldey's assessment, Dr. Pena's assessment, and Dr.Oas's evaluation,][10] and the multiple office visits at Bridgeway Center."   T. 33.   The ALJ did not, as the Commissioner perhaps implies, distinguish between different parts of Dr. Harper's opinion or expressly discredit any portion thereof.   The ALJ incorporated all of Dr. Harper's findings into the RFC except for the finding that Ms. Shireman is moderately limited in her ability to respond appropriately to usual work situations. T. 23-24, 734.   For example, Dr. Harper stated claimant would have mild restrictions in her ability to understand, remember, and carry out complex instructions.   T. 733. Accordingly, the ALJ found claimant was only "able to understand, remember, and carry out *short and simple* instructions[.]"   T. 23 (emphasis added).   Dr. Harper also indicated plaintiff would have moderate restriction in her ability to interact appropriately with the public, supervisors, and co-workers.   T. 734.   The ALJ also incorporated this finding into the RFC, which limited Ms. Shireman to "occasional interaction with the general public, co-workers, and supervisors."   T. 23.   In addition, the ALJ limited plaintiff to "work that has only occasional changes in the work setting," which is consistent with Dr. Harper's determination that claimant had moderate restriction in her ability to respond appropriately to changes in a routine work setting.   T. 24, 734.   Thus, the only portion of Dr. Harper's Medical Source

---

[10] After reviewing claimant's medical records, Nancy Hinkeldey, Ph.D., and Jorge Pena, Ph.D., assessed Ms. Shireman's mental residual functional capacity during the initial consideration and reconsideration of her disability application.   T. 125-136, 166-179.

Statement of Ability to do Work-Related Activities (Mental) the ALJ did not incorporate into the RFC was the finding that claimant had a moderate restriction in her ability to respond appropriately to usual work situations.

The ALJ's decision does not reveal why the moderate limitation on claimant's ability to respond appropriately to usual work situations was omitted from the RFC determination. This case bears similarities to *Martin v. Comm'r of Soc. Sec.*, where the court concluded the ALJ did not properly reject a consultative psychologist's findings. No. 3:12cv900-J-MCR, 2013 WL 3893260 at *5-7 (M.D. Fla. July 26, 2013). In *Martin*, the ALJ gave considerable weight to the opinions of a psychologist, Dr. Benet. *Id.* at *5. Dr. Benet found, *inter alia*, the claimant had marked difficulties in responding to usual work situations and changes in a routine work setting. *Id.* at *3-4. The plaintiff claimed the ALJ erred by failing to pose a hypothetical to the vocational expert that accounted for this limitation. *Id.* at *4. The Commissioner argued the ALJ discounted the marked limitation because:

> the ALJ, in discussing Dr. Benet's findings, observed these assessments were obtained without any sustained mental health treatment or long-term benefits from medications and appeared to be based on Plaintiff's self-reported history. The ALJ also noted Plaintiff reportedly demonstrated adequate attention and concentration during his interview, and the MMPI-2 testing suggested Plaintiff may have unintentionally exaggerated the intensity of his symptoms.

*Id.* at *6 (citation omitted). The court, however, rejected the Commissioner's explanation:

> To the extent the Commissioner argues these statements by the ALJ were provided in order to discount only the assessed marked limitation in responding to usual work situations and to changes in a routine setting, the Court disagrees.  The ALJ's statements apply with equal force to all of the findings in Dr. Benet's Medical Source Statement and provide no basis for rejecting only the marked limitation.  Indeed, in making these observations, the ALJ referred to Dr. Benet's findings in general rather than any specific finding.  Accordingly, the Court finds the ALJ did not properly reject Dr. Benet's assessment of a marked limitation in Plaintiff's ability to respond to usual work situations and changes in a routine work setting.

*Id.*; *see also id.* at *5 ("[T]he ALJ explicitly stated he gave considerable weight to Dr. Benet's findings and provided no exception for the assessed marked limitation.").  As in *Martin*, the ALJ in the present case did not offer any explanation for excluding Dr. Harper's finding that Ms. Shireman has moderate difficulty in responding appropriately to usual work situations.  *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) ("[W]hen the ALJ fails to 'state with at least some measure of clarity the grounds for his decision,' we will decline to affirm 'simply because some rationale might have supported the ALJ's conclusion.'") (*quoting Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)); *see also Hanna v. Astrue*, 395 F. App'x 634, 636 (11th Cir. 2010) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review.") (*citing Owens*, 748 F.2d at 1516).

In reaching this conclusion, I have considered the Commissioner's view that a limitation on ability to respond appropriately to usual work situations may be vocationally significant.  As Social Security Ruling 85-15 explains:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

*Titles II & XVI: Capability to Do Other Work – The Medical-Vocational Rules as a Framework for Evaluating Solely Nonexertional Impairments*, SSR 85-15; *see also Harris v. Astrue*, No. 1:11cv310-CSC, 2012 WL 3031257 at *3-4 (M.D. Ala. July 25, 2012) (remand required when ALJ failed to "address the effect of a marked limitation in [claimant's] ability to respond appropriately to usual work situations" in hypothetical posed to vocational expert or residual functional capacity determination).

Plaintiff claims the inability to respond appropriately to usual work situations manifests as an (1) "inability to perform at a consistent pace without an unreasonable number of, or unreasonably long, rest periods"; and (2) "inability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to be punctual within customary tolerances." (Doc. 16, p. 22-23).  At

the September 2014 hearing, the ALJ posed a hypothetical to the vocational expert that mirrored Ms. Shireman's RFC, but included the limitation that the individual would frequently be unable to complete assigned tasks in the time given by a supervisor.  T. 48-50.  In response, the vocational expert testified that an individual with those limitations would not be able to perform the jobs of kitchen helper/dishwasher, hand packager, or laundry worker—the jobs the ALJ ultimately found Ms. Shireman capable of performing.  T. 36, 50.

Thus, a moderate limitation in the ability to respond appropriately to usual work situations can be vocationally significant.  Because the ALJ's decision does not explain why he omitted the limitation from the RFC determination, this case must be remanded to the Commissioner.

## CONCLUSION

The ALJ did not err in formulating Ms. Shireman's physical residual functional capacity.  The ALJ's discussion of Dr. Harper's opinions, however, was inadequate.  Because the ALJ's decision does not reveal why a portion of Dr. Harper's opinion was omitted from the RFC assessment, and the effect of the omission on the ALJ's decision is unclear, this case will be remanded to the Commissioner.  Although concluding that remand is warranted, the court expresses no opinion as to the merits of the applications for benefits.

Accordingly, it is ORDERED:

The Commissioner's decision is set aside, and the matter is REMANDED for further proceedings consistent with this order.

At Pensacola, Florida, this 19th day of May, 2016.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**